Dear Superintendent Picard:
You requested the opinion of this office concerning several issues dealing with the Education Excellence Fund (the "Fund") created in the State Treasury pursuant to Article VII, Section 10.8 of the Louisiana Constitution. You advised that the Department of Education (the "Department") has received inquiries from several school districts that wish to invest all or a part of their Education Excellence Fund (the "Fund") monies either pursuant to R.S. 39:99 or on their own. Your first question is:
Does the language of La. Const. Art. VII, Section 10.8(C)(3)(f) and (g)preclude the Department of Education from using any Fund money to payemployees to perform any of the administrative functions associated withthe Fund that the Department has under law?
As a consequence of the Master Settlement Agreement (the "Settlement Agreement") entered in the case" Richard P. Ieyoub, Attorney General, Ex Rel. State Of Louisiana v. Philip Morris, Incorporated, et al.", the Louisiana electorate approved Article VII, Section 10.8 of the Louisiana Constitution establishing the Millennium Trust (the "Trust"). The constitutional provision, as well as enabling legislation contained at R.S. 39:98.1, et seq., provides for the deposit and credit of the Tobacco Settlement proceeds received by the State, after the effective date thereof, to the Trust. Article VII, Section 10.8 of the Constitution also establishes the creation of three special funds, the Health Excellence Fund, the Educational Excellence Fund and the TOPS Fund, within the Millennium Trust, and provides for the allocation and credit of the Tobacco Settlement Revenues received by the Trust, and the earnings of the Trust, to these special funds.
The monies in the Trust may only be withdrawn pursuant to an appropriation by the legislature for the purposes authorized. As to appropriations from the Fund, Subparagraph (C) in subsubparagraphs (a) through (e) list the entities to whom appropriations from the Fund may be made. Subsubparagraphs (C)(3)(f), (g) and (h) further provide in pertinent part as follows:
 (3) Appropriations from the Education Excellence Fund shall be limited as follows:
* * *
 (f) Monies appropriated pursuant to this Subparagraph shall be restricted to expenditure for pre-kindergarten through twelfth grade instructional enhancement for students, including early childhood education programs focused on enhancing the preparation of at-risk children for school, remedial instruction, and assistance to children who fail to achieve the required scores on any tests passage of which are required pursuant to state law or rule for advancement to a succeeding grade or other educational programs approved by the legislature. Expenditures for maintenance or renovation of buildings, capital improvements, and increases in employee salaries are prohibited. The state superintendent of education shall be responsible for allocating all money due private schools.
 (g) Each recipient school or school system shall annually prepare and submit to the state Department of Education, hereinafter the "department", a prioritized plan for expenditure of funds it expects to receive in the coming year from the Education Excellence Fund. The plan shall include performance expectations to ensure accountability in the expenditure of such monies. The department shall review such plans for compliance with the requirements of this Subparagraph and to assure that the expenditure plans will support excellence in educational practice. No funds may be distributed to any school or school system until its plan has received both legislative and departmental approval as provided by law.
 (h) No amount appropriated as required in this Paragraph shall displace, replace, or supplant appropriations from the general fund for elementary and secondary education, including implementing the Minimum Foundation Program. This Subsubparagraph shall mean that no appropriation for any fiscal year from the Education Excellence Fund shall be made for any purpose for which a general fund appropriation was made in the previous year unless the total appropriations for the fiscal year from the state general fund for such purpose exceed general fund appropriations of the previous year. Nor shall any money allocated to a city or parish school board pursuant to this Paragraph displace, replace, or supplant locally generated revenue, which means that no allocation to any city or parish school board from the investment earnings attributable to the Education Excellence Fund shall be expended for any purpose for which a local revenue source was expended for that purpose for the previous year unless the total of the local revenue amount expended that fiscal year exceeds the total of such local revenue amounts for the previous fiscal year. (Emphasis added).
We concur in the conclusion reached by the Department regarding your first question. There is no authorization for any of the monies in the Fund to be used to pay the administrative expenses of the Department to carry out its duties associated with the Fund.
You next ask: Does Article VII, Section 10.8(C)(3)(f) or (g) permitthe investment of any Fund money, and/or the payment from the Fund of anyfees associated with its investment? If so, should plans submittedinclude such fees as items of expenditure? Also, should plans then alsoinclude expenditures from these investments, in addition to plans forexpenditures from the Fund?
Monies received as a result of the Master Settlement are deposited into the Trust within the State Treasury and are divided equally between the Fund, the Health Education Fund and the TOPS Fund. With one exception, the corpus of the Trust cannot be appropriated or expended, but rather is held in trust and invested. The only exception is that ten percent of the total monies received for credit to the Fund for the first three years (2000-2001 through 2002-2003), can be appropriated for the purposes provided in Subsubparagraph (C)(3)(d). The monies in the Trust are to be invested as provided in Article VII, Section 10.8(B) as provided in pertinent part as follows:
 (B) Monies credited to the Millennium Trust pursuant to Paragraph (A) of this Section shall be invested by the treasurer with the same authority and subject to the same restrictions as the Louisiana Education Quality Trust Fund. However, the portion of monies in the Millennium Trust which may be invested in stock may be increased to no more than fifty percent by a specific legislative instrument which receives a favorable vote of two-thirds of the elected members of each house of the legislature. The legislature shall provide for procedures for the investment of such monies by law. The treasurer may contract, subject to the approval of the State Bond Commission, for the management of such investments and, if a contract is entered into, amounts necessary to pay the costs of the contract shall be appropriated from the Millennium Trust. (Emphasis added)
As provided in Paragraph (C)(1), appropriations are limited to an annual amount not to exceed the amount of annual earnings from interest, dividends, and realized capital gains on investment of the Trust in excess of an inflation factor as recognized by the Revenue Estimating Conference. Paragraph (C)(1) states in pertinent part:
 Appropriations from the Health Excellence Fund, Education Excellence Fund, and TOPS fund shall be limited to an annual amount not to exceed the estimated aggregate annual earnings from interest, dividends, and realized capital gains on investment of the trust as recognized by the Revenue Estimating Conference. Amounts determined to be available for appropriation shall be those aggregate investment earnings which are in excess of an inflation factor as determined by the Revenue Estimating Conference. . . (Emphasis added)
Also pertinent is Subsubparagraph (C)(3)(i) which provides:
 (i) The treasurer shall maintain within the state treasury a record of the amounts appropriated and credited for each entity through appropriations authorized in this Subparagraph and which remain in the state treasury. Notwithstanding any other provisions of this constitution to the contrary, such amounts, and investment earnings attributable to such amounts, shall remain to the credit of each recipient entity at the close of each fiscal year.
As seen from these quoted provisions, the Constitution envisions that the Treasurer will invest the principal amounts of the monies in the Trust, including the monies in the Fund. Those investments are limited to the same restrictions as the Louisiana Education Quality Trust Fund. The only fees associated with the investment of the monies which are authorized by the Constitution are if the treasurer, with the approval of the State Bond Commission, contracts for the management of the investments under paragraph (C)(1). In that instance, the fees would be appropriated and paid from the Trust and not from one of the three funds. There is no authorization for the school districts to pay investment fees under Article VII, Section 10.8, including Subsubparagraphs (C)(3)(f) or (g). Accordingly, the plans submitted by the recipients of the Fund should not include fees for the investment of Fund monies as an item of expenditure, should such investment even be an authorized expenditure.
In that regard, the Constitution does not authorize the school districts or other recipients to withdraw the monies from the Fund merely to invest the funds. The recipients are required to submit "a prioritized plan for expenditure of funds". The plan is to include "performance expectations to ensure accountability in the expenditure of such monies". The department is to review such plans for compliance with the requirements of the constitution and "to assure that the expenditure plans will support excellence in educational practice." Webster's II New Riverside University Dictionary defines "expend" to mean "1. To lay out: SPEND. 2. To use up: CONSUME". "Invest" is defined to mean "1. To commit (money) in order to gain profit or interest. 2. To utilize for future benefit or advantage".
If, however, the investment income from the Trust has been appropriated by the legislature to the Fund and the school districts either have not had their plans approved and cannot withdraw their funds from the state treasury or choose not to withdraw their funds from the state treasury, the treasurer is required to allocate investment earnings to the amounts which remain on deposit in the state treasury to the credit of each entity. As you noted, the legislature by Act No. 161 of the First Extraordinary Session of 2002, enacted R.S. 39:99
to provide a procedure for the investment of monies remaining in the state treasury to the credit of local school boards. Any additional income to be received by the school districts from the investment of funds in the treasury should be included in the plans required to be submitted to the Department for approval.
Trusting this adequately responds to your request, we remain
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: ____________________________ MARTHA S. HESS Assistant Attorney General
RPI:MSH:jv
DATE RELEASED: September 5, 2002